## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BLISS BURNHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. CIV-11-80-M |
| | ) |
| VALIR HEALTH, LLC, | ) |
| | ) |
| Defendant. | ) |

### **ORDER**

This case is scheduled for trial on the Court's March 2012 trial docket.

Before the Court is defendant's Motion for Summary Judgment, filed January 3, 2012. On January 23, 2012, plaintiff filed her response, and on January 30, 2012, defendant filed its reply. Based upon the parties' submissions, the Court makes its determination.

I.     Introduction

Plaintiff was a Marketing Representative at defendant Valir Health, LLC ("Valir") in the Outpatient Services department. As a Marketing Representative, plaintiff was responsible for marketing to physicians, medical and referral staff, and the community, for Outpatient Physical and Occupational Therapy and Valir Management and Development Services.

Plaintiff submitted her first request for a medical leave of absence on August 7, 2009. According to the request, the leave was to last approximately four weeks – from August 17, 2009 until September 21, 2009. Valir granted the request and treated the absence as FMLA qualifying.

On September 10, 2009, shortly before her scheduled return, plaintiff delivered a second doctor's certificate stating: "Bliss will not be able to work due to medical reasons until October 19, 2009. She will be able to return to work at that time." September 10, 2009 letter from The Center for Counseling and Health Resources Inc., attached as Exhibit 4 to Valir's Motion for Summary

Judgment. Based upon the doctor's certificate, Valir extended plaintiff's leave of absence by approximately one more month – from September 21, 2009 until October 19, 2009.

On October 27, 2009, plaintiff submitted a third request for leave. Her request states, in pertinent part:

> My doctors did say that with an additional 9 months of medical treatment and rest they are confident I will be able to return to work and perform all the essential functions of my position. As a result, I am officially requesting another 9 months of medical leave as an accommodation of my disability. The doctors say I will be able to return to work on August 1, 2010. I will assume this simple accommodation of my disability is acceptable unless I hear back from you otherwise.

October 27, 2009 letter from plaintiff, attached as Exhibit 7 to Valir's Motion for Summary Judgment. As a follow-up, on October 29, 2009, plaintiff delivered a physician's statement stating that she would be able to return to work on August 1, 2010.

In response, Bill Turner, Valir's Vice President of Human Resources, contacted plaintiff by phone on October 30, 2009, and advised her that Valir would grant her third request for leave. Mr. Turner also explained that plaintiff's FMLA leave would be exhausted on November 10, 2009, at which time she would transition to general leave. Mr. Turner further explained that he could not hold her position open past November 10, 2009, but that she could contact him once she is released to see what Valir has available. Mr. Turner then placed plaintiff on a "General Leave of Absence" from November 11, 2009 until May 9, 2010.

According to Valir, although it attempted to cover its marketing responsibilities during plaintiff's absence, the reduced staff was unable to adequately market to and serve its business locations. Specifically, Valir alleges that due to the reduced staff in the Marketing Department, Valir struggled to maintain a marketing presence for its Outpatient Division in particular. Valir

further alleges that although it attempted to compensate for the short staff by diverting existing marketing representatives from its Hospital (Inpatient) Division to market for the Outpatient Division, doing so spread the representatives too thin. Valir contends that these increased burdens caused marketing staff morale and effectiveness to suffer and that Valir's volumes, admissions, patient discharges, patient days, and average daily census were down in the first half of 2010, in comparison to earlier years. Valir additionally alleges that the limitations and deficiencies caused by the short-staffed marketing department became even more evident and pronounced when Valir launched a new workers' compensation program (WorkSTEPS). Consequently, Valir states that on April 1, 2010, it hired Joyce Melton to fill plaintiff's position to bolster Valir's marketing of the WorkSTEPS program, in particular, and to recapture the marketing presence lost with the reduced active staff.

On June 7, 2010, Mr. Turner wrote to plaintiff and advised her that although she had been on a "General Leave of Absence" since the FMLA period had expired on November 10, 2009, and although a "General Leave of Absence" at Valir is limited to 60 days unless otherwise approved, he had nonetheless approved the leave through June 17, 2010. Mr. Turner also explained that plaintiff would need to submit a written request for an extension of the General Leave of Absence, and he provided a form for her to do so. Mr. Turner also explained that since plaintiff had exhausted her 12 weeks of eligible Family Medical Leave, she would only be permitted to return to work in an open position for which she possesses the minimum qualifications to perform.

On June 14, 2010, plaintiff responded to Mr. Turner's letter, stating, in pertinent part:

> I appreciate the accommodations Valir has afforded me regarding my ADA disability up to this point. . . . However, please note that I am asking for an extension of my medical leave for my ADA disability, not a "General Leave of Absence."

3

        \*        \*        \*

> My doctor did say that with an additional 41 business days of rest and treatment she is confident I will be able to return to work and perform all the essential functions of my position. As a result, I am officially requesting another 41 business days of medical leave as an accommodation of my ADA disability. The doctor says I will be able to return to work on August 2, 2010. I will assume this simple accommodation of my disability is acceptable unless I hear back from you otherwise.

June 14, 2010 letter from plaintiff, attached as Exhibit 12 to Valir's Motion for Summary Judgment.

On June 24, 2010, Mr. Turner responded to plaintiff's letter as follows:

> Valir has *approved* your request for additional leave, until August 2, 2010, based upon your doctor's certification that you will be able to return to work at that time.
>
> When you come to Valir on the morning of August 2, 2010, please come to my office with your completed medical release/return to work certification in hand. At that time, we will review the release, and we will determine which if any jobs are available that you are qualified to perform. Next, we will arrange a return-to-work physical screen with Kristi Cox, as required by our company's policies.
>
> Should you have any questions in the next few months, feel free to contact me. . . . Otherwise, I will see you on August 2nd.

June 24, 2010 letter from Mr. Turner, attached as Exhibit 13 to Valir's Motion for Summary Judgment.

On August 2, 2010, plaintiff returned to Valir with a full-duty release. Plaintiff met with Mr. Turner, and they reviewed a complete listing of any open positions with Valir; however, there were no vacant positions in the Marketing Department, or elsewhere, for plaintiff to perform. As a result, Mr. Turner agreed to contact plaintiff if such a position came open. Mr. Turner also agreed that plaintiff would have priority over other applications for any position that came open within the next

month. Finally, Mr. Turner explained that plaintiff's status would remain "inactive" for the time being, since there was no available position.

On January 27, 2011, plaintiff filed the instant action, alleging violations of the Americans with Disabilities Act ("ADA") and the Oklahoma Anti-Discrimination Act based upon Valir's failure to accommodate, discrimination based upon plaintiff's disability, and retaliation. Valir now moves for summary judgment on all of plaintiff's claims.[1]

## II.     Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

---

[1] In her response, plaintiff concedes that summary judgment is appropriate on her retaliation claim.

*Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III.   Discussion

    A.   Failure to accommodate claim

Under the ADA, an employer can unlawfully discriminate against an employee by failing to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). "The statute thus establishes a cause of action for disabled employees whose employers fail to reasonably accommodate them." *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1048 (10th Cir. 2011) (internal quotations and citation omitted).

Courts have held that in order to defeat an employer's motion for summary judgment, an employee need only show that an "accommodation" seems reasonable on its face, i.e., ordinarily or in the run of cases. *See US Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002). Once the employee has made this showing, the employer then must show special, typically case-specific, circumstances that demonstrate undue hardship in the particular circumstances. *Id.* at 402. "Undue hardship" means an action requiring significant difficulty or expense when considered in light of various factors, such as the nature and cost of the accommodation and the impact of the accommodation upon the operation of the company. *See Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1178 (10th Cir. 1999).

In the case at bar, plaintiff asserts that a 12-month leave of absence coupled with allowing her job to remain vacant during her absence was a reasonable accommodation for her disability. Having carefully reviewed the parties' submissions, and viewing the evidence in the light most favorable to plaintiff and viewing all reasonable inferences in plaintiff's favor, the Court finds that plaintiff has not shown that her requested accommodation seems reasonable on its face. While "[a]n allowance of time for medical care or treatment may constitute a reasonable accommodation", *Taylor v. Pepsi-Cola Co.*, 196 F.3d 1106, 1110 (10th Cir. 1999) (internal quotations and citation omitted), and while the Court finds that a 12-month leave of absence seems reasonable on its face, the Court finds that a 12-month leave of absence <u>coupled with</u> allowing the job to remain vacant during the 12-month leave of absence certainly does not seem reasonable on its face. Plaintiff has made absolutely no showing that such a leave of absence coupled with a job remaining vacant is ordinary, in the run of cases.

Additionally, even if plaintiff could show that her requested accommodation seems reasonable on its face, the Court finds that Valir has shown special circumstances that demonstrate undue hardship in the particular circumstances of this case. Specifically, Valir has presented admissible evidence that during the period of time that plaintiff's position remained vacant, Valir was unable to maintain its market presence, unable to adequately market its new WorkSTEPS program, and suffered morale and effectiveness issues in its marketing department. Additionally, Valir has presented admissible evidence that its volumes, admissions, patient discharges, patient days, and average daily census suffered while plaintiff's former position was vacant. Plaintiff has presented absolutely no evidence to dispute Valir's evidence of undue hardship.

Accordingly, the Court finds that Valir is entitled to summary judgment as to plaintiff's reasonable accommodation claim.

B.    Disability discrimination claim

In order to establish a prima facie case of disability discrimination under the ADA, a plaintiff must demonstrate that he (1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired, and (3) suffered discrimination by an employer or prospective employer on the basis of that disability. *See E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037-38 (10th Cir. 2011). For purposes of this order, the Court will assume that plaintiff can establish a prima facie case of disability discrimination.

Once the plaintiff makes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* at 1038. Valir asserts that because it was an undue hardship to keep plaintiff's job vacant, Valir had to fill plaintiff's job and, consequently, had to place plaintiff in inactive status when she returned to work because there were no available jobs for her. The Court finds Valir has met its burden to produce a legitimate, non-discriminatory reason for its employment action.

"If the defendant proffers such a [legitimate, nondiscriminatory] reason, the burden then shifts back to the plaintiff to show that the defendant's stated reasons are merely 'pretextual.'" *Id.* "[A] plaintiff can establish pretext by showing the defendant's proffered non-discriminatory explanations for its actions are so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude [they are] unworthy of belief." *Id.* at 1038-39 (internal quotations and citations omitted). The Court has carefully reviewed the parties' briefs and evidentiary submissions.

8

Viewing the evidence in the light most favorable to plaintiff and viewing all reasonable inferences in plaintiff's favor, the Court finds plaintiff has not presented sufficient evidence to create a genuine issue of material fact as to whether Valir's reason for its employment action is pretextual.  As set forth above, plaintiff has presented no evidence to dispute Valir's evidence of undue hardship. Plaintiff has also presented no evidence to dispute that there were no available jobs for her when she came back to work.  Finally, the Court finds that plaintiff has not presented any evidence indicating that Valir's reason for its employment action is pretextual.

Accordingly, the Court finds that Valir is entitled to summary judgment as to plaintiff's disability discrimination claim.

IV.     Conclusion

For the reasons set forth above, the Court GRANTS defendant's Motion for Summary Judgment [docket no. 19].

**IT IS SO ORDERED this 6th day of February, 2012.**

*/s/ Vicki Miles-LaGrange*
VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE